15247

GLENN *ET AL.* v. WOODWORTH, MAYOR, *ET AL.*

(14 S. E. (2d), 555)

*Messrs. Johnson & Johnson,* for appellant,

*Mr. E. W. Johnson,* for respondent,

April 23, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

The predecessor in interest of the respondent, being the owner of land in Spartanburg County adjacent to a driveway claimed to be the property of the city and admittedly under the city's control, located outside of the city limits, constructed at his own expense a private sewer line under the driveway to connect the property in question with the city sewer line. This was done with the consent of the city. The appellants, the mayor and members of the council of the City of Spartanburg have granted permission to the owner of other property abutting on the aforementioned driveway to tap the private sewer line thus constructed. The questions presented on this appeal involve principally the contention of the respondent that the sewer line in question cannot be used by other property owners whose property abuts on the driveway and sewer line without his consent, and that it is not within the power of the City of Spartanburg to grant permission to such other property owners to use the sewer line.

The facts disclosed by the record, as far as pertinent to the legal questions presented by the exreptions, are as follows:

In the year 1928, and prior thereto, one W. S. Glenn was the owner of 67.6 acres of land lying to the north of the incorporate limits of the City of Spartanburg, traversed by a natural watercourse known as Little Chinquapin Creek. He subdivided this land or a considerable portion thereof, into lots as a development project, known as Glennwood Heights, and sought the permission of the City of Spartanburg to permit him the privilege of constructing a sewer line leading from his subdivision development and across and under a driveway immediately to the north of and adjoining Cleveland Park Lake and Cleveland Park, which lay between his development and the city limits, and into the city limits connecting with the city's sewerage system.

For some considerable time Mr. Glenn was unable to get this permission, and it was only after the State Board of Health had approved the use of septic tanks which would have drained into Little Chinquapin Creek, the chief source of Cleveland Park Lake, that the city permitted the connection. Taken from the records of the city council of the City of Spartanburg, page 418, March 14, 1928, is the following: "Mr. W. S. Glenn came before Council relative to sewerage on his development out beyond Cleveland Park and a motion that he be allowed to tie in with the city sewer in so far as the present area that Mr. Glenn has sewered outside of the city limits, the tie in to be under the supervision of the City Engineer and the State Board of Health, provided that Mr. Glenn pay one-half of the cost of remedying the present construction in the sewer line back of the incinerator in the city limits, resulted in the following vote: Yeas —Sanders, Baber, and Willard. Nays—Brown and Brice."

Cleveland Park, in which is included the lake above referred to, lies partly within and partly without the said city's limits.

The City of Spartanburg acquired Cleveland Park by deed of gift from Jno. B. Cleveland, which deed carried a reversionary clause to his estate in the event the property should

cease to be used as a public park or playground. There is no claim that the sewer line installed or built by Glenn and under the said driveway immediately to the north of the lake and park, and under, over and across a corner of the park just before entering State Highway No. 176, is in derogation of the reversion clause.

The Master in his report, which was concurred in by the trial Judge, expresses some doubt as to whether the driveway to the north of the park, and the other driveways around same were included· in the acreage conveyed the city by Mr. Cleveland, but in the terms and conditions of the deed it is stated, among other things: "The City of Spartanburg is to improve all roads or streets located within the City limits on said tract of land by grading and top-soiling, and I am to improve the roads and streets lying outside of the city limits on said tract of land." If not included in the acreage, there was at least a dedication of these driveways.

This sewer line was constructed by Mr. Glenn wholly at his expense, and at a cost of approximately $10,000.00, be the same more or less, and for the use of his development or subdivision. And it was so constructed as to be adequate to take care of all sewerage from his lands and a subdivision of lands of one, Scruggs, which it was necessary to cross, permission having been given to Scruggs to connect therewith in consideration of Glenn being allowed to construct the sewer line under and across the Scruggs land, which is situate between the Glenn land and Cleveland Park.

Following the connection of the sewer line under discussion with the city's sewer line, the city installed a new sewer commencing at the point where the "Glenn sewer" emptied into its sewer, but "the line back of the incinerator" was not the one into which the "Glenn sewer" emptied. Insofar as the record shows, the city has never remedied the defect in the construction of the sewer line back of the incinerator and hence has not called upon Glenn to

pay any portion of the cost of such project. The Master found as a fact that appellants have not shown that respondent's predecessor (W. S. Glenn) owed the city any sum of money. This finding of fact was concurred in by the Circuit Judge, and there being ample testimony to sustain such finding, it is binding upon this Court.

The following is an excerpt from the minutes of meeting of the Spartanburg City Council on December 19, 1938: "Gus M. Moore, who owns property on the Asheville Highway, appeared before Council with reference to tapping sewer line. It was brought out that the line in question was out of the City Limits; and it, therefore, either belongs to W. S. Glenn or to the Clevelands. Mr. Moore was instructed to consult the City Attorney as to whether or not he could connect on the sewer line in the Cleveland Park Area."

Thereafter, on March 31, 1939, the city plumbing inspector for appellants issued a permit to Nehi Bottling Company, as owner of a vacant lot to the north of the driveway adjoining Cleveland Park Lake and the driveway which is traversed by the "Glenn Sewer" line, to connect therewith, and accordingly a connection was made. This connection was made approximately 400 feet outside of the limits of the City and the property of Nehi Bottling Company is wholly without the City limits. Some time thereafter, Mr. Glenn learned of this and appealed to the appellants to rescind the permit which they refused to do, and this action followed.

In explanation of the title of this case, and as part of the history thereabout, in 1931, W. S. Glenn was adjudged a bankrupt. The tract of land and subdivision, "Glennwood Heights," was conveyed by the trustee in bankruptcy to Mrs. Willetta C. Glenn, the wife of W. S. Glenn, who instituted this action. During the pendency of the action Mrs. Glenn has died and by proper order W. S. Glenn has been substituted individually and as administrator of her estate as the plaintiff.

The agreed "Statement" in the Transcript of Record is in part as follows: "The plaintiff's complaint alleged in substance that with the permission of the defendants' predecessors in office, a sewer line had been laid on the property belonging to the City of Spartanburg by reason of an agreement between the plaintiff's husband and the City of Spartanburg in 1928; and that in the early part of 1939 the defendants, acting for the City of Spartanburg, granted permission to a third party to connect onto the sewer line which had been installed by the plaintiff. The complaint challenges the defendants' right to do so and claims that the ownership and control of the sewer line was vested in the plaintiff. With the complaint a rule to show cause, signed by Honorable T. S. Sease, was served on the defendants, restraining them from further interfering with plaintiff's use and enjoyment of the sewer line described in the complaint. The defendant, by return to the rule to show cause and answer, admitted the installation of the sewer line in accordance with an agreement between the plaintiff's husband and the City of Spartanburg, but, as a defense, denied first that the plaintiff's husband had ever complied with his part of the agreement, and second, that by reason of the agreement no ownership of the sewer line was ever vested in the plaintiff, but on the contrary was vested in the City of Spartanburg only. The cause was referred to the Master in equity for Spartanburg County, who, in his report filed in the Court of Common Pleas, decided issues which had been joined in favor of the plaintiff. Exceptions to the report were taken and argued before Honorable T. S. Sease, who, thereafter, by decree filed September 11, 1940, affirmed the Master's report and also decided material issues in favor of plaintiff, from which in due time the defendants have appealed to this Court."

Appellants come to this Court upon three exceptions, as follows:

"(1) That his honor erred in finding that the plaintiff

had acquired any easement for the sewer line as against the defendants in view of the fact that the undisputed testimony shows that it was a contract between the plaintiff and the City of Spartanburg, the terms of which were never fulfilled by the plaintiff, and that after a breach thereof no rights could have accrued to the plaintiff thereunder;

"(2) That his honor erred in finding that ownership and control of the sewer line was vested in the plaintiff, as the undisputed testimony shows that sewer line was installed by the plaintiff on the property which has always belonged to the City of Spartanburg, that no reservation of title, control, or ownership was made by the plaintiff at the time of its installation or any time thereafter, and that, as a matter of law, title thereto became vested in the owner of the property; and

"(3) That his honor erred in not finding as a. matter of law that even had there been any agreement between the plaintiff and the defendants which had been complied with by the plaintiff, such an agreement would have been an *ultra vires* act and null and void in that a municipal corporation cannot grant away absolutely rights in public streets to private individuals, which rights the municipal corporation holds for the general public."

Exception 1 resolves itself into an issue of fact, and as hereinbefore stated, this issue was decided against the appellants by the Master. The trial Judge concurred in the Master's findings in this regard, and as there was ample testimony to support the conclusion thus reached, this Court accepts such conclusion as determinative of the issue.

Exceptions 2 and 3 will be discussed together.

The land under which the sewer was laid is admittedly public property as far as the questions herein presented are concerned. Permission to install the sewer under such public property was permission granted in the exercise of inherent municipal powers to promote such incidental interests of the municipality as are involved in en-

couraging the development of a suburb, and the promotion of sanitary measures in such suburb.

Except for the fact that Glenn paid for the construction of the sewer, whereas the bottling company made no contribution to such expenditure, the two cases are identical in principle. That is to say, in the case of the bottling company the action of the city in permitting the tapping of the sewer under the street was intended to be the exercise of a municipal power to promote an enterprise adjoining the city and the permission for which, it may be inferred, is regarded in the interest of the municipality.

The permission granted Glenn, in the last analysis, was to avail himself of the use of the city sewer system. The same was true in the case of the bottling company.

Thus in both instances the parallel is complete as far as the purpose of the city's dealings with the respective parties is concerned.

We are not here concerned with the question whether Glenn or his successors in interest could discontinue the sewer by stoppage or removal, nor with the question of ownership of the materials in the Glenn sewer line. Nor are we in this case confronted with the question of the limits of the respective rights of the municipality and of Glenn in the sewer line. The making of successive grants of rights of user to property owners along the sewer line might ultimately raise the issue of overloading the sewer, or otherwise impair the rights granted Glenn upon due consideration of his investment in the sewer line, and from which some character of property rights might perhaps arise.

Stripping the consideration of the case from such non-existing factors, we return to the narrow issue whether or not one who constructs a sewer line under a driveway or street, with the permission of the municipality, and without any reservation or restriction in the grant with respect to the use of the sewer line, may object to its use by other property owners where permission of the mu-

nicipality is first had and obtained. The question is not entirely free from difficulty, and the authorities that we have examined are not entirely harmonious in principle. We have found no case which presents the problem within the precise limitations that are presented here.

If the view of respondent were to prevail, the result would be that in a situation of the present character each property owner along the driveway or street could be required to construct a separate sewer line to tap the city sewer. Practical considerations would include a repeated tearing up of the driveway or street and the accumulation of sewer lines.

The fact that in this particular case the property adjoining the driveway in question is not within the City limits is not very material. The surrounding circumstances are such that thought should be given to the possibility of the extension of the City limits at some future time, and to the fact that even without such extension the interests of the city in such adjoining property and in the sanitary facilities connected therewith are sufficiently great to hold that its position must be regarded as paramount to that of any property owner.

Limiting ourselves to the precise problem here presented, we are constrained to reject a viewpoint which in effect gives priority to private rights over the interests of the municipality in the operation and use of a sewer line which in the first instance could never have been constructed without the consent of the municipality and which under the facts of this case can be made available to other property owners without injury to the rights of the successors of the Glenn interests.

The preservation of private property rights against encroachment or impairment under the guise of the broader interests of the public sometimes involves shadowy lines of demarcation. In the present case, for example, the facts and circumstances surrounding the construction of the sewer

line in question doubtless created some character of property rights in Glenn and in his successors in interest, but the conclusion we reach in this case is not, under the facts disclosed by the present record, a deprivation of such rights, but rather an application of the fundamental principles that public grants will be narrowly construed so as not to extend them beyond the probable contemplation of the parties, and so as to negative any exclusive rights that would operate to the prejudice of the grantor or to the public generally.

It is unfortunate that the parties failed to deal with the issues at the time permission to Glenn was granted. There was lack of diligence in the failure of Glenn to call for an express exclusion of participation by others in the use of the sewer line and an equal lack of diligence on the part of the municipality in failing to properly delineate the limits of permission to use the public driveway or street. In such a situation we are bound to seek a result that protects the contractual and property right of the Glenn interests in obtaining access to the city sewer line and at the same time to avoid a construction of the grant that might prove injurious to the paramount public interests that are involved.

While these principles are not precisely analogous, we do not overlook that the conclusion above indicated is impelled by such legal principles as are inherent in the doctrine of dedication of private property to public use, and in the devolution of title to fixtures upon the owner of the land upon which they are affixed.

It should be emphasized that we are disposing only of the precise issue made in the present case, to wit, the legality of the act of the appellants in granting permission to the Nehi Bottling Company to tap the Glenn sewer line under the facts presented by this record. There is no sufficient showing in the case that this use of the sewer line will now or at any other time overload the line, or otherwise impair its use by the Glenn interests. If the respondent undertakes to grant permission to other property owners to tap the Glenn sewer

line, considerations affecting the development of the Glenn property are among those which, upon proper proof, might bring about a conclusion different from that hereinabove indicated.

While this fact is not in any sense controlling, it is pertinent to point out that the record discloses that the Glenn sewer line has been almost wholly serviced by the city at its own cost.

For the foregoing reasons it is our opinion that the judgment of the Circuit Court should be and it hereby is reversed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, FISHBURNE and STUKES concur.